**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

LIONRA TECHNOLOGIES LTD.,

        Plaintiff,

    v.

VMWARE, INC.,

        Defendant.

Case No. 1:23-cv-929-DAE

**JURY TRIAL DEMANDED**

**DEFENDANT VMWARE, INC.'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................... 1

II. BACKGROUND ................................................................................................... 2

    A.    '518 Patent ..................................................................................................... 2

    B.    '708 Patent ..................................................................................................... 5

    C.    Indirect Infringement ................................................................................... 6

III. LEGAL STANDARD ........................................................................................... 6

IV. THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY ................... 8

    A.    Lionra Fails to Plausibly Allege Direct Infringement of the '518 Patent ............. 8

        1.    Lionra's Direct Infringement Allegations are Contradicted by Lionra's Own Cited Evidence, and Thus Fail as a Matter of Law ........... 9

        2.    Lionra's Interpretation of the Claims Was Disclaimed During Prosecution of the '518 Patent ................................................................. 12

    B.    Lionra Fails to Plausibly Allege Direct Infringement of the '708 Patent ............ 15

    C.    Lionra Fails to Allege the Key Required Elements for Indirect Infringement .... 17

V. CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aguirre v. Powerchute Sports, LLC*,
No. 10-CV-0702-XR, 2011 WL 2471299 (W.D. Tex. June 17, 2011) ...................................18

*ALD Soc. LLC v. Google LLC*,
No. 22-CV-972-FB, 2023 WL 3184631 (W.D. Tex. Mar. 17, 2023)...................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................7

*Bench Walk Lighting LLC v. LG Innnotek Co., Ltd.*,
530 F. Supp. 3d 468 (D. Del. 2021)...............................................................................20

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) .............................................................................7, 11, 14, 17

*Castlemorton Wireless, LLC v. Bose Corp.*,
No. 20-CV-00029-ADA, 2020 WL 6578418 (W.D. Tex. July 22, 2020)............................18

*CTD Networks LLC v. Microsoft Corp.*,
No. 22-CV-01049-XR, 2023 WL 5417141 (W.D. Tex. Aug. 22, 2023)..............................20

*Grecia Est. Holdings LLC v. Meta Platforms, Inc.*,
605 F. Supp. 3d 905 (W.D. Tex. 2022).........................................................................7, 15

*Kumar v. Ovonic Battery Co.*,
351 F.3d 1364 (Fed. Cir. 2003).........................................................................................4

*Laitram Corp. v. Rexnord, Inc.*,
939 F.2d 1533 (Fed. Cir. 1991).........................................................................................7

*LS Cloud Storage Techs., LLC v. Amazon.com, Inc.*,
No. 22-CV-1167-RP, 2023 WL 2290291 (W.D. Tex. Feb. 27, 2023) ..................................14

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018).................................................................................7, 8, 18

*Ottah v. Fiat Chrysler*,
884 F.3d 1135 (Fed. Cir. 2018).................................................................................13, 17

*Parus Holdings Inc. v. Apple Inc.*,
No. 6:19-cv-432, Dkt. 101 ...............................................................................................18

*R2 Invs. LDC v. Phillips*,
401 F.3d 638 (5th Cir. 2005) .............................................................................................7

*Sonos, Inc. v. Google LLC*,
   591 F. Supp. 3d 638 (N.D. Cal. 2022) ................................................................19

*Textile Computer Sys., Inc. v. Broadway Nat'l Bank*,
   620 F. Supp. 3d 557 (W.D. Tex. 2022) ...............................................................20

*USC IP P'ship, L.P. v. Facebook, Inc.*,
   No. 20-CV-00555-ADA, 2021 WL 3134260 (W.D. Tex. July 23, 2021) ..............18

*V-Formation, Inc. v. Benetton Grp. SpA*,
   401 F.3d 1307 (Fed. Cir. 2005)..............................................................................4

*Vervain, LLC v. Micron Tech., Inc.*,
   No. 21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ............11, 12, 13, 14, 17

*Voip-Pal.com, Inc. v. Facebook, Inc.*,
   No. 21-CV-00665-ADA, 2022 WL 1394550 (W.D. Tex. May 3, 2022) ...............20

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
   528 F. Supp. 3d 247 (D. Del. 2021).....................................................................19

**Statutes**

35 U.S.C. § 271(a) ...................................................................................................2, 7

35 U.S.C. § 271(b) ...................................................................................................2, 7

35 U.S.C. § 271(c) ...................................................................................................2, 7

**TABLE OF EXHIBITS**

| Exhibit | Document |
|---------|----------|
| 1 | US App. Ser. No. 10/822,048 ('518 Patent) – Dec. 21, 2007 Applicant Remarks |
| 2 | US App. Ser. No. 10/822,048 ('518 Patent) – June 18, 2008 Applicant Remarks |
| 3 | US App. Ser. No. 10/822,048 ('518 Patent) – Jan. 9, 2009 Applicant Remarks |
| 4 | US App. Ser. No. 10/822,048 ('518 Patent) – Oct. 17, 2008 Office Action |
| 5 | US App. Ser. No. 10/798,074 ('708 Patent) – July 12, 2007 Applicant Remarks |
| 6 | US App. Ser. No. 10/798,074 ('708 Patent) – Aug. 29, 2007 Notice of Allowance |
| 7 | US App. Ser. No. 10/822,048 ('518 Patent) – Nov. 4, 2009 Issue Notification |
| 8 | *Lionra Techs. Ltd. v. Fortinet, Inc.*, No. 2:22-cv-322-JRG-RSP, Dkt. 162, Claim Construction Order (E.D. Tex. Nov. 27, 2023) |

## I.      INTRODUCTION

Plaintiff Lionra Technologies Ltd.'s Original Complaint (Dkt. 1) failed to plausibly allege infringement of key claim elements of each Asserted Patent.  After VMware moved to dismiss on that basis, Lionra filed an Amended Complaint that, besides dropping one patent-in-suit, left Lionra's threadbare allegations as to the remaining patents-in-suit substantively unchanged. Lionra's superficial additions in the Amended Complaint fail to address the previously identified deficiencies and, if anything, expose further why Lionra cannot plausibly allege infringement.

For instance, although the claims of the '518 Patent require a "dynamic access control list" and a separate "enhanced access control list," Lionra continues to accuse only a *single* set of rules as being *both* required access control lists—an accusation entirely contrary to the claim language and the patent's intrinsic record.  Indeed, Lionra's cited evidence confirms its infringement allegations are incorrect.  But even accepting Lionra's incorrect allegations, Lionra explicitly disclaimed the subject matter it purports to accuse during prosecution to save its claims from invalidation, such that the infringement theory in its Amended Complaint fails as a matter of law.

Similarly, Lionra has failed to plausibly allege that any aspect of the accused products employs the "temporal access pattern" described and claimed in the '708 Patent.  Lionra's allegations are directly at odds with its own narrow definition of this term provided during prosecution and repeated throughout the patent specification.  Given the overwhelming contrary intrinsic evidence, and as the Eastern District of Texas recently affirmed in its interpretation of this term (Ex. 8, *Lionra Techs. Ltd. v. Fortinet, Inc.*, No. 2:22-cv-322-JRG-RSP, Dkt. 162, Claim Construction Order at 7–11 (E.D. Tex. Nov. 27, 2023)), no plausible construction of "temporal access pattern" could even arguably capture Lionra's expansive infringement allegations.

Furthermore, Lionra has failed to state a plausible claim for ***indirect*** infringement.  Lionra does not allege that VMware knew about either patent-in-suit, much less its purported infringement

of them before Lionra filed suit.  With no allegation of VMware's presuit knowledge of infringement, Lionra's indirect infringement claims should also be dismissed.

Because the deficiencies from Lionra's original Complaint, which VMware identified in its October 16, 2023 Motion to Dismiss (Dkt. 17), persist, any further amendment would be futile, and Lionra's claims should therefore be dismissed with prejudice.

## II.    BACKGROUND

On August 7, 2023, Lionra filed its Original Complaint (Dkt. 1) against VMware for both direct and indirect infringement of U.S. Patent Nos. 7,623,518 ("the '518 Patent"), 7,302,708 ("the '708 Patent") 9,264,441 ("the '441 Patent").  On October 16, 2023, VMware moved to dismiss Lionra's Original Complaint, explaining why Lionra failed to allege direct or indirect infringement of any Asserted Patent, and further on the basis that Lionra had failed to allege any pre-suit notice by VMware sufficient to allege a claim of indirect infringement.  *See* Dkt. 17.  On November 6, 2023, and in lieu of responding to VMware's motion, Lionra filed its Amended Complaint (Dkt. 23) in which Lionra no longer asserted infringement of the '441 Patent.

The allegations in Lionra's Amended Complaint remained largely the same regarding the '518 and '708 Patents.  Lionra continues to allege direct infringement under 35 U.S.C. § 271(a), and indirect infringement under 35 U.S.C. §§ 271(b) and (c).  Lionra asserts infringement of at least claim 15 of the '518 Patent and claim 1 of the '708 Patent.  Lionra's Amended Complaint (Dkt. 23) attaches claim charts which purport to include evidence of infringement of the sole asserted claim of each Asserted Patent.  *See* Am. Compl., Exs. 2, 7.

### A.    '518 Patent

The '518 Patent is directed to controlling access by a user to a computer network through "access control lists" that "restrict or define the hosts with which a given host is allowed to communicate."  The patent explains that, in a conventional ethernet network, IP addresses may be

assigned to an ethernet host, such as a "computer system," to facilitate communication with other networks like the Internet. '518 Patent at 1:25–38. A prior art method to "automatically assign IP addresses to hosts" in the ethernet network used "a dynamic host configuration protocol." *Id.* at 1:64–2:2. The dynamic host configuration protocol assigned IP addresses from "a pool of available IP addresses" to hosts "as needed," meaning that "the IP address of [a] host is not static but changes over time." *Id.* at 2:2–10. However, because existing "static" access control lists rely on "having a set IP address for a given host," they do not work "when an IP address assigned to the host by the [dynamic access control protocol] server is different than the IP address contained in the [access control list]." *Id.* at 2:10–14. That is, according to the patent, in systems where host IP addresses change (*i.e.*, are dynamic), unchanging (*i.e.*, static) access control lists will not match up with the changing IP addresses, and therefore do not work.

Claim 15 of the '518 Patent, the sole claim identified in the Amended Complaint, recites:

[Preamble] A network switching circuit, comprising:

[a] a forwarding circuit operable to detect specific received packets and to provide the specific packets on a processor port, and further operable to receive packets on one of a plurality of ports including the processor port and to forward each received packet to a port corresponding to a destination address contained in the packet subject to access restrictions contained in a dynamic access control list;

[b] a memory circuit coupled to the forwarding circuit, the memory circuit operable to store packets and operable to store an enhanced access control list and a dynamic access control list; and

[c] a processor coupled to the forwarding circuit and to the memory circuit, the processor operable to define the specific packets detected by the forwarding circuit and operable to process the specific packets stored in the memory circuit using the enhanced access control list to generate the dynamic access control list and store the dynamic access control list in the memory circuit, and further operable to provide the specific packets to the processor port of the forwarding circuit after processing the packets.

As relevant here, claim 15 recites both an "enhanced access control list" and a "dynamic access control list," each of which is stored in a "memory circuit," and a "processor" that "us[es] the

enhanced access control list to generate the dynamic access control list."

During prosecution, all claims of the '518 Patent were rejected multiple times. In response to each rejection, the applicant repeatedly admitted that the prior art disclosed "a traditional access control list containing IP addresses." Ex. 1 (12/21/07 Remarks) at 11; Ex. 2 (6/18/08 Remarks) at 11; *see also* Ex. 3 (1/9/09 Remarks) at 11 (admitting that prior art discloses "update[ing] a list of IP addresses used as an access list"). But the applicant insisted that this "traditional access control list containing IP addresses" did not disclose the "enhanced access control list" or the "dynamic access control list" recited in the claims. *See* Ex. 1 (12/21/07 Remarks) at 11 ("[The prior art] includes a traditional access control list containing IP addresses, but does not disclose an enhanced access control list. There is no suggestion in [the prior art] that an enhanced access control list is generated containing more information than a list of IP addresses."); Ex. 2 (6/18/08 Remarks) at 11 (same).[1] On the basis of these representations by the applicant—*i.e.*, that the prior art disclosed "a traditional access control list containing IP addresses " but did not disclose "an enhanced access control list, and converting information from the enhanced access control list to develop a dynamic access control list"—the claims were ultimately allowed. *See* Ex. 4 (10/17/08 Office Action) at Cover, 9.

Lionra accuses various VMware products[2] of infringing "at least claim 15." Am. Compl., Ex. 2 at 1. Lionra's claim chart (Am. Compl., Ex. 2) asserts that "VMware SD-WAN devices contain 'firewall rules' that are used to configure 'Allow or Deny Access Control (ACL) rules'"

---

[1] The Federal Circuit has "established that 'prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence'" that may be considered on a motion to dismiss. *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1311 (Fed. Cir. 2005) (quoting *Kumar v. Ovonic Battery Co.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003)).

[2] The accused products for the '518 Patent are identified as "VMware SD-WAN Edge 510, Edge 510 LTE, Edge 520, Edge 540, Edge 6x0, Edge 840, Edge 2000, [and] Edge 3x00." Am. Compl., Ex. 2 at 1.

and that these "firewall rules are an enhanced access control list, e.g., a series of rules that are used to generate a dynamic access control list." *Id.* at 12. Lionra further asserts that "[t]he dynamic access control list are resolved IP address [*sic*] that are admitted or blocked based on the firewall rules in the enhanced access control list." *Id.* Lionra argues that "the firewall rules [*i.e.* the enhanced access control list] are distinct from the dynamically generated access control list, in that they provide the criteria to determine whether an IP address should be admitted or blocked, without directly specifying the IP address." *Id.* at 13; *see also id.* at 16 ("When an incoming connection is detected, this rule, e.g., enhanced access control list, is resolved into a specific IP address action, e.g., a dynamically generated access control list.").

**B.** **'708 Patent**

The '708 Patent is directed to systems and methods for controlling access to a computer system based on the enforcement of access privileges. Specifically, the patent explains that "conventional systems . . . do not support the ability to look at temporal patterns of access." '708 Patent at 1:22–32. The patent purports to claim an improvement whereby access is enforced based on both a "predetermined access level" and whether the user or request "completes" a "temporal access pattern." *Id.* at 1:55–2:6.

Claim 1 of the '708 Patent, which Lionra asserts is "exemplary," recites:

[Preamble] A method for secure access to a computer system, comprising the steps of:

[a] receiving in said computer system a request from an entity with a predetermined access level for access to a first base node representing at least one of an information type and a computer system function;

[b] determining if said access request completes a prohibited temporal access pattern for said entity;

[c] comparing a minimum access level established for said first base node to said predetermined access level;

[d] granting said access request only if it does not complete a prohibited temporal access pattern for said entity, and said minimum access level for said first base node does not exceed said predetermined access level; and

[e] denying said request if said access request completes a prohibited temporal access pattern for said entity.

As relevant here, claim 1 recites a method for "secure access to a computer system" that includes "determining" if an "access request" to a "first base node" "completes a prohibited temporal access pattern." '708 Patent, cl. 1.  During prosecution, the applicant distinguished the prior art solely on the basis that it disclosed using "security levels, such as top secret, secret, and unclassified," but not a "temporal access pattern." Ex. 5 (7/12/07 Remarks) at 10.  Claim 15 was allowed in the next office action.  *See* Ex. 6 (8/29/07 Notice of Allowance).

Lionra accuses "VMware NSX" of infringement.  Am. Compl., Ex. 7 at 1.  Regarding the "temporal access pattern" element, Lionra specifically accuses "rate limiting checks," which Lionra argues "control the number of accepted access requests per a duration of time, e.g. whether an incoming requests performs a prohibited temporal sequence." *Id.* at 12; *see id.* at 13 ("Requests or connections from the external network to the VMs represent an access request that is being compared against a temporal access patter [*sic*], for example, the counts of request per period.").

### C.    Indirect Infringement

In the Amended Complaint, Lionra does not allege that VMware had knowledge of the Asserted Patents or purported infringement of them before the suit was filed.  Instead, for each patent, Lionra merely alleges that VMware had knowledge of the patents and of infringement "[a]t least as of the filing and service of the original complaint." Am. Compl. ¶¶ 12–13, 22–23.

## III.    LEGAL STANDARD

A complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted."  The complaint must include more than "a formulaic recitation

of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  It must set forth facts that, if true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  The Court need not "strain to find inferences favorable to the plaintiffs" nor "accept conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).

A claim for direct infringement under 35 U.S.C. § 271(a) requires that each and every element of a patent claim be "found in an accused product or process exactly or by a substantial equivalent." *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).  At the pleading stage, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product [or process] infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  "The detail required to plead direct infringement adequately depends on 'the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device.'" *Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, 605 F. Supp. 3d 905, 916 (W.D. Tex. 2022) (quoting *Bot M8*, 4 F.4th at 1353).  Although "[a] plaintiff is not required to plead infringement on an element-by-element basis," "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal*/*Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8*, 4 F.4th at 1352–53.

Indirect infringement may take the form of induced infringement under 35 U.S.C. § 271(b) or contributory infringement under 35 U.S.C. § 271(c).  Both require a plausible allegation of underlying *direct* infringement.  *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) ("It is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement.").  "For an allegation of induced infringement to survive

7

a motion to dismiss, the complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement."  *Id.* at 1356.  "[C]ontributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."  *Id.*

## IV.   THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY

In its Amended Complaint, Lionra fails to plausibly allege its direct and indirect infringement claims.  Lionra's direct infringement allegations for the '518 and '708 Patents hinge on implausible—if not impossible—interpretations for key claim elements that are manifestly contrary to the intrinsic evidence, including Lionra's own statements during prosecution.  The evidence Lionra cites in support of its allegations also contradicts those allegations and confirms that they are, at best, implausible.  This is insufficient as a matter of law, and warrants dismissal. In addition, because Lionra entirely fails to allege that VMware had presuit knowledge of either patent-in-suit and VMware's purported infringement of them—a fundamental requirement for pleading indirect infringement—Lionra's indirect infringement claims should be dismissed as well.  Because these deficiencies were identified in VMware's initial Motion to Dismiss (Dkt. 17), Lionra's failure to remedy them in its Amended Complaint demonstrates that further amendment would be futile, such that Lionra's claims should be dismissed with prejudice.

### A.    Lionra Fails to Plausibly Allege Direct Infringement of the '518 Patent

Lionra offers no plausible theory as to how the accused products meet the "dynamic access control list" claim element of the '518 Patent.  Lionra has failed to allege that any such "list" exists anywhere in the accused products that is—as the claims require—distinct from the separately claimed "enhanced access control list."   Regardless, Lionra's accusation of a list of "IP address[es]" as the dynamic access control list is explicitly and repeatedly contradicted by disclaimers in the patent's prosecution history, such that, even accepting Lionra's factual

allegations about the accused product as true, Lionra's interpretation of the claim fails as a matter of law.  Lionra thus fails to plausibly demonstrate the accused products include the dynamic access control list required by claim 15, the only '518 Patent claim identified in the complaint.

> **1.    Lionra's Direct Infringement Allegations are Contradicted by Lionra's Own Cited Evidence, and Thus Fail as a Matter of Law**

The '518 Patent claims, specification, and prosecution history all consistently refer to a *separate* "enhanced access control list" and "dynamic access control list," plainly mandating that these are different things.  But while Lionra identifies purportedly "distinct" aspects of the accused products for these elements, Lionra's own cited evidence demonstrates that it, in fact, accuses the *same* purported "access control list" as being *both* of these central claim elements.

> **a.    Claim 15 Separately Recites an "Enhanced" and a "Dynamic" "Access Control List"**

The "enhanced access control list" and "dynamic access control list" are separate elements in every claim of the '518 Patent.  Asserted claim 15 requires (1) a "processor" that "us[es] the enhanced access control list to generate the dynamic access control list," and (2) a "memory circuit" which "store[s]" both the "enhanced access control list" and the "dynamic access control list."  '518 Patent, cl. 15.  Claim 15 also recites (3) a "forwarding circuit" that receives packets and then "forward[s] each received packet to a port … subject to access restrictions contained in [the] dynamic access control list."  *Id.*  Every claim of the '518 Patent follows this pattern[3]—the "enhanced access control list" is used to "generate" a separate "dynamic access control list."

The '518 Patent specification reinforces this distinction.  For instance, the specification explains that the "enhanced access control list" contains the "IP address, user name, DNS name,

---

[3] *See* '518 Patent, cl. 1 ("developing" a separate "access control list" by "converting" an "enhanced access control list"); cl. 8 ("generating a dynamic access control list from the enhanced access control list"); cl. 19 ("using the enhanced access control list to generate the dynamic access control list").

Windows domain name, and MAC address information for the users and hosts … of the network." '518 Patent at 1:59–62.  By contrast, the "dynamic access control list" "contain[s] [the] IP addresses currently being utilized by various users of the network."  *Id.* at 1:53–55.  The specification explains that existing access control lists used a "static" IP address for a host, which "does not work" when "the IP address of the host is ***not*** static but changes over time."  *See id.* at 1:58–2:14.  The claimed system thus "uses the information contained in the enhanced access control list," including the "static" IP address, "to determine ***current IP addresses*** for users" and "then stores the determined [*i.e.*, current] IP addresses in the dynamic access control list."  *Id.* at 1:62–66.  Every disclosed embodiment adheres to this same distinction (*see e.g.*, *id.* at 5:26–33; 7:39–50; 9:19–27), and there is no disclosure suggesting an alternative embodiment where these separate lists collapse into one.  The difference between the information in the "enhanced access control list" ("static" IP address) and the "dynamic access control list" ("current" IP address) goes to the heart of the solution offered by the patent—they cannot logically be the same thing.

### b.   Lionra's Own Cited Evidence Demonstrates that Lionra is Accusing a Single "Access Control List"

Lionra accuses a single "access control list," which it attempts to artificially sub-divide into discrete parts, in the accused products of being ***both*** the "enhanced access control list" and the "dynamic access control list."  Specifically, Lionra asserts that the "enhanced access control list" in the accused products is "firewall rules that are used to configure Allow or Deny Access Control (ACL) rules."  Am. Compl., Ex. 2 at 12.  Lionra then argues that "the dynamic access control list are ***resolved IP address[es]*** that are admitted or blocked ***based on the firewall rules*** in the enhanced access control list."  *Id.*  Lionra asserts that the "firewall rules [*i.e.* the purported enhanced access control list] are distinct from the dynamically generated access control list" because they do not "directly specify[] the IP address."  *Id.* at 13.

The VMware documentation that Lionra cites, however, confirms precisely the **opposite**. The VMware documentation makes clear, for instance, that the accused firewall rules **do** directly specify the IP address—*i.e.*, "[firewall] rules can be based on … **source IP address** [or] **destination IP address**." Am. Compl., Ex. 2 at 13; *see also id.* at 14 ("Configure Firewall Rules: . . . In the Source section, click the Define button if you want to narrow the source traffic to a specific VLAN, **an IP address**, or MAC address."); *id.* at 17 ("Edge Access behavior can be defined on the Firewall page [and] can be set to Deny All, Allow All, or **Allow for Specific IP addresses**."). There is no suggestion anywhere in Lionra's cited documents that a separate "list" of "resolved IP addresses" exists in the accused products. *See id.* at 6–18.

Lionra's own cited evidence thus confirms that its allegations are implausible and should be dismissed. "Where, as here, the factual allegations are actually inconsistent with and contradict infringement, they are likewise insufficient to state a plausible claim." *Bot M8*, 4 F.4th at 1354. In *BotM8*, the Federal Circuit found that the claims of the asserted patent required that several "program[s]" were "stored on the **same** board including a memory" that was "**separate** from the 'motherboard' and its memory." *Id.* (emphasis in original). The plaintiff, however, had cited evidence in claim charts attached to its complaint that these "program[s]" were stored on the "motherboard," **not** on a separate "board including a memory." *Id.* The Federal Circuit thus affirmed dismissal of plaintiff's complaint, holding that this "allegation renders [plaintiff's] infringement claim not even possible, must less plausible." *Id.*; *see also Vervain, LLC v. Micron Tech., Inc.*, No. 21-CV-00487-ADA, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022) (dismissing infringement allegations where claim required that "contents are transferred out of the **most active** blocks," but documentation of the accused products cited by the plaintiff "describe[d] the **opposite phenomenon**: contents are transferred out of the **least active** blocks").

Here, the claims indisputably require the "dynamic access control list" to be separate from the "enhanced access control list." But having pled evidence that conclusively demonstrates that the "list of IP addresses" (*i.e.*, the purported "dynamic access control list") is the same thing as the "firewall rules" (*i.e.*, the purported "enhanced access control list"), Lionra is in precisely the same situation as the plaintiff in *BotM8*. Lionra's statements directly contradicting the documentation it relies on, which is quoted immediately above the statements in question (*see, e.g.*, Am. Compl., Ex. 2 at 13), are insufficient to plausibly allege infringement, and Lionra's infringement allegations for the '518 Patent should therefore be dismissed in their entirety.

### 2. Lionra's Interpretation of the Claims Was Disclaimed During Prosecution of the '518 Patent

Even if the accused products included a "list" of "IP address[es]" that Lionra accuses as the "dynamic access control list," and that list was "distinct from" the "firewall rules" (which is not the case), Lionra would still fail to plausibly allege infringement. The "dynamic access control list" is at the heart of the claims, and was the sole distinction over the prior art the applicant identified during prosecution. But Lionra now accuses, as the "dynamic access control list," the "list" of "IP address[es]" that it specifically admitted existed in the prior art during prosecution, and which it argued were distinct from the dynamic access control list of the then-pending claims. Ex. 1 (12/21/07 Remarks) at 11; Ex. 2 (6/18/08 Remarks) at 11. If a claim element is identified as the point of novelty during prosecution, but a complaint accuses only the prior art, such assertions fail to plausibly allege infringement as a matter of law. *Vervain*, 2022 WL 23469, at *5.

The '518 Patent is titled "Dynamic Access Control Lists." Throughout multiple rejections during prosecution, Lionra consistently touted the "dynamic access control list" as the point of

novelty over the prior art.[4]  In particular, Lionra explicitly asserted that the prior art disclosed "a traditional access control list containing IP addresses," but that the dynamic access control list differed because it "is generated containing ***more information*** than a list of IP addresses."  Ex. 1 (12/21/07 Remarks) at 11; Ex. 2 (6/18/08 Remarks) at 11.  Lionra admitted that the prior art disclosed "updat[ing] a list of IP addresses used as an access list," but contended that this did not disclose "generating a dynamic access control list from the enhanced access control list," such that, according to the applicant, updating a list of IP addresses did not meet the alleged key limitation of the claims.  Ex. 3 (1/9/09 Remarks) at 11.  These statements were the ***sole*** basis on which Lionra distinguished the '518 Patent claims from the prior art, and the patent was thereafter allowed.  *See* Ex. 4 (10/17/08 Office Action) at Cover, 9; Ex. 7 (11/4/09 Issue Notification).

The specification of the '518 Patent further confirms that the "dynamic access control list" is the focal point of the claims.  The '518 Patent identifies a problem in prior art access control lists IP addresses are assigned from "a pool of available IP addresses" to hosts "as needed," meaning that "the IP address of [a] host is not static but changes over time."  '518 Patent at 2:2–10.  The '518 Patent explains that prior art "static" access control lists relied on "having a set IP address for a given host," and did not work when IP addresses were dynamically assigned.  *Id.* at 2:10–14.  The purported solution proposed by the '518 Patent is an "access control list[] that allows access of hosts in a computer network such as an Ethernet network to be restricted or controlled

---

[4]  Courts have routinely examined disclaimers made during prosecution in finding infringement allegations implausible in light of those disclaimers.  *See, e.g.*, *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141–42 (Fed. Cir. 2018) (affirming dismissal at pleading stage because "in view of the specification and prosecution history" claim limitation "could not plausibly be construed to include or be the equivalent of" what patentee contended met limitation); *Vervain*, 2022 WL 23469, at *5–7 (finding infringement allegations implausible based on claim scope disclaimed during prosecution).

based upon user names, MAC addresses, domain names, and DNS names ***instead of merely IP***

***address information***." *Id.* at 3:12–16.[5]

Here, however, a list "of merely IP address information" is—at the very most—exactly

what Lionra accuses as the "dynamic access control list" in this case.  Am. Compl., Ex. 2 at 12

("***The dynamic access control list are resolved IP address[es]*** that are admitted or blocked based

on the firewall rules in the enhanced access control list.").  This is precisely what the '518 Patent

specification identifies as the prior art when it explains, in the "Background of the Invention"

section, that "[a] router typically includes an access control list (ACL) to restrict or define the hosts

with which a given host is allowed to communicate" and that "the access control list on the router

***would contain a field indicating that packets from [an] IP address*** corresponding to [a] Web site

are to be denied." '518 Patent at 1:39–41, 1:49–54; *see also id.* at 1:54–57.  Likewise, the "list"

of "IP address[es]" Lionra accuses is precisely what it admitted was known in the prior art during

prosecution—*i.e.*, "a traditional access control list containing IP addresses."  Ex. 1 (12/21/07

Remarks) at 11; Ex. 2 (6/18/08 Remarks) at 11.

Because the "dynamic access control list" is the point of novelty of the '518 Patent claims,

and because Lionra has failed to accuse anything more than the admitted prior art for this element,

Lionra's allegations are implausible as a matter of law.  Courts in this District have routinely held

that "[a] plaintiff cannot establish why it is plausible that the accused product infringes the patent

claim, by merely articulating why it is plausible that the accused product practices the prior art."

*Vervain*, 2022 WL 23469, at *5 (quoting *Bot M8*, 4 F.4th at 1353); *LS Cloud Storage Techs., LLC*

---

[5]  The '518 Patent consistently emphasizes that access control lists based on IP addresses were
known in the prior art.  *See, e.g.*, '518 Patent at 1:39–41 (Background of the Invention:  "A router
typically includes an access control list (ACL) to restrict or define the hosts with which a given
host is allowed to communicate.").

*v. Amazon.com, Inc.*, No. 22-CV-1167-RP, 2023 WL 2290291, at *4 (W.D. Tex. Feb. 27, 2023) (same); *Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, 605 F. Supp. 3d 905, 916 (W.D. Tex. 2022) (same). Here, even if Lionra were correct that the accused products include an access control list of IP addresses separate from the "firewall rules" (they do not), Lionra would still only be accusing the admitted prior art as the "dynamic access control list"—the heart of the '518 Patent claims. This is insufficient to plausibly allege infringement as a matter of law, and Lionra's infringement claim for the '518 Patent should thus be dismissed in its entirety.

### B.   Lionra Fails to Plausibly Allege Direct Infringement of the '708 Patent

The '708 Patent claims require "determining" whether a "request" in a computer system "completes a prohibited temporal access pattern." '708 Patent, cls. 1, 9, 10. To save the claims during prosecution and avoid the prior art, Lionra offered a specific definition of what it means to "complete a prohibited temporal access pattern," after which the claims were allowed. But now, to allege infringement, Lionra advances an entirely different definition of this central claim element that is irreconcilable with what Lionra told the Patent Office. Lionra's infringement allegations for the '708 Patent therefore rely on a wholly implausible claim construction that is contrary to all of the intrinsic evidence. Thus, again, accepting Lionra's factual allegations about the accused products as true, the Amended Complaint still fails as a matter of law to plausibly allege infringement of the '708 Patent, such that Lionra's claim should be dismissed.

Regarding the "temporal access pattern" element, Lionra asserts that "any network traffic requesting access to a computer system is a request in which the [accused product] determines if it completes a prohibited temporal access pattern." Am. Compl., Ex. 7 at 13. In particular, Lionra accuses "rate limiting checks," which Lionra argues "control the number of accepted access requests per a duration of time, e.g. whether an incoming requests performs a prohibited temporal sequence." *Id.* at 12. Lionra thus appears to be mapping the "temporal access pattern" to alleged

"counts of request[s] per period" in the accused product.  *Id.* at 13 ("Requests or connections from the external network to the VMs represent an access request that is being compared against a temporal access patter [*sic*], for example, the counts of request per period.").

        During prosecution, however, Lionra made clear that the "temporal access pattern" was not simply a "count[] of request[s] per period."  Following a rejection of all claims, Lionra included a "review of the Applicant's invention" with a claim amendment.  Lionra stated that "it should be appreciated that a temporal access pattern is defined by ***a temporal relation between two or more nodes***."  Ex. 5 (7/12/07 Remarks) at 8.[6]  Lionra offered the example of a single node in a computer network ("Node A") which has two data items ("Item N1" and "Item N2"):

> For example, a prohibited temporal access pattern of a Node A is defined by a ***temporal relation between an Item N1 and an Item N2***, e.g., N1 → N2.  Thus a temporal ordering at Node A exists that the Item N1 ***is accessed before*** the Item N2.

*Id.*  Lionra sought to specifically define the "temporal access pattern" to have nothing to do with the ***number*** of requests, but instead to concern only the ***order*** in which those requests are made:

> So, for the security policy associated with Node A to be activated, not only must the Item N1 and Item N2 be accessed but ***they must be accessed in the order indicated by the temporal relation***.

*Id.*; *accord* Ex. 8, *Lionra Techs. Ltd.*, No. 2:22-cv-322-JRG-RSP, Dkt. 162, Claim Construction Order at 10 ("temporal relation is necessarily with respect to two or more nodes").  The specification of the '708 Patent also repeatedly emphasizes the requirement that completing a temporal access pattern requires that ***multiple nodes*** "must be accessed in the order indicated by the temporal relationship" ('708 Patent at 4:12–16) and further explains that the sole factor in

---

[6]  Notably, in co-pending litigation in the Eastern District of Texas, the Court construed "temporal access pattern" to mean "a temporal relation between two or more nodes that communicates the ordering in time of events."  Ex. 8, *Lionra Techs. Ltd. v. Fortinet, Inc.*, No. 2:22-cv-322-JRG-RSP, Dkt. 162, Claim Construction Order at 7, 11 (E.D. Tex. Nov. 27, 2023) (rejecting Lionra's proposed construction that would encompass a "'single node' embodiment").

determining whether requests "complete a temporal access pattern" is the ***order*** in which they are made (and not their quantity).  *See id.* at 5:28–6:2, Figs. 6 & 7.

Lionra's infringement allegations fail to identify any aspect of the accused products analyzes the ***order*** in which requests are made to make any determination whatsoever.  Nothing in Lionra's allegations even suggests this is the case.  Instead, Lionra only asserts—contrary to its own definition offered during prosecution—that "completing a temporal access pattern" involves nothing more than considering "counts of request[s] per period."  *See* Am. Compl., Ex. 7 at 13.

Lionra's allegations therefore should be dismissed as implausible because they hinge on an interpretation of a claim term that—as one court has already found (Ex. 8, *Lionra Techs. Ltd.*, No. 2:22-cv-322-JRG-RSP, Dkt. 162, Claim Construction Order at 7–11)—***all*** of the intrinsic evidence expressly ***negates***.  Infringement allegations cannot be plausible when they "rest[] on an implausible claim construction."  *Bot M8 LLC*, 4 F.4th at 1354.  But here, to find anything in the accused products to accuse as the "temporal access pattern," Lionra must ignore how the applicant defined this term during prosecution, and how the '708 Patent specification repeatedly defines the term.  Thus, Lionra's infringement allegations should be dismissed.  *See, e.g.*, *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141 (Fed. Cir. 2018) (affirming dismissal where there was "no claim that can be plausibly construed" to cover the infringement allegations in plaintiffs' complaint); *ALD Soc. LLC v. Google LLC*, No. 22-CV-972-FB, 2023 WL 3184631, at *4 (W.D. Tex. Mar. 17, 2023) (granting motion to dismiss where plaintiffs' infringement allegations were contrary to the "commonsense reading" of the claims); *Vervain*, 2022 WL 23469, at *6 (dismissing infringement allegations as implausible "under any reasonable construction of the relevant terms").

### C.    Lionra Fails to Allege the Key Required Elements for Indirect Infringement

Lionra's indirect infringement allegations should be dismissed because Lionra has completely failed to allege that VMware had presuit knowledge of infringement of the Asserted

Patents, as required to plausibly allege indirect infringement.[7]  Specifically, Lionra was required to plausibly allege that, **before this suit** was filed, VMware knew **both** (1) about the Asserted Patents, and (2) that its customers or other third parties were infringing the patents.  *Nalco*, 883 F.3d at 1356.  Lionra completely failed to allege either, either in its original Complaint or its Amended Complaint.  Thus, Lionra's indirect infringement allegations should be dismissed.[8]

Although there is currently a split in authority,[9] courts in this District have held that sole reliance on the filing of a complaint for the requisite knowledge of patent infringement is insufficient to plausibly allege indirect infringement.  *See, e.g.*, *Aguirre v. Powerchute Sports, LLC*, No. 10-CV-0702-XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (holding that reliance "on knowledge of [plaintiff's] patent after the lawsuit was filed . . . is insufficient to plead the requisite knowledge for indirect infringement").  Consistent with this logic, in a nationwide review of case law on this issue, Judge Alsup of the Northern District of California recently

---

[7]  It is settled law that a plaintiff may not rely on the filing of an original complaint to support allegations of pre-suit notice in an amended complaint.  For example, in *Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432, Dkt. 101, ¶ 44 (W.D. Tex. Feb. 20, 2020), the Court dismissed the indirect infringement claims in plaintiff's amended complaint where plaintiff's only allegation of knowledge was that "Defendant Apple has had knowledge of the '431 Patent since at least the filing of the original complaint."  *See also, e.g.*, *Castlemorton Wireless, LLC v. Bose Corp.*, No. 20-CV-00029-ADA, 2020 WL 6578418, at *5 (W.D. Tex. July 22, 2020) (dismissing indirect infringement claims where plaintiff's only allegation of knowledge was that Defendant "had knowledge of the '421 patent since at least the service of this Complaint").

[8]  As a threshold matter, Lionra's failure to plausibly allege **direct** infringement of any Asserted Patent, as discussed *supra* in Sections A & B, independently precludes any cause of action for *indirect* infringement.  *See Nalco*, 883 F.3d at 1355 ("It is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement.").

[9]  VMware is aware of other decisions in this District dismissing *presuit* damages but allowing *postsuit* damages in instances where a plaintiff relies on the filing of the complaint to satisfy the knowledge element.  *See, e.g.*, *USC IP P'ship, L.P. v. Facebook, Inc.*, No. 20-CV-00555-ADA, 2021 WL 3134260, at *2 (W.D. Tex. July 23, 2021).  For the reasons stated below, however, VMware contends that the more appropriate approach given Lionra's complaint is full dismissal of the indirect infringement claims.

explained why a plaintiff should not be permitted to rely on the mere filing of a complaint to satisfy the knowledge requirement of indirect infringement claims as to postsuit damages.  *See Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 643–48 (N.D. Cal. 2022).  Judge Alsup held that presuit notice, such as through a notice letter, is required to "give the alleged infringer a meaningful opportunity to cease infringement or to get a license" and mere reliance on the filing of the complaint cannot provide "a good faith basis for alleging willful infringement."  *Id.* at 643–44.

Judge Connolly of the District of Delaware likewise has articulated that "[t]he purpose of a complaint is to obtain relief from an existing claim and ***not to create a claim***."  *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 251 (D. Del. 2021).  Judge Connolly explained that "[t]he limited authority vested in our courts by the Constitution and the limited resources made available to our courts by Congress counsel against encouraging plaintiffs to create claims by filing claims.  It seems to me neither wise nor consistent with principles of judicial economy to allow court dockets to serve as notice boards for future legal claims for indirect infringement."  *Id.*

The same reasoning should apply to Lionra's deficient indirect infringement claims. Lionra alleges only that VMware first knew of the Asserted Patents "[a]t least as of the filing and service of the original complaint."  Am. Compl., ¶¶ 12–13, 22–23.  Having failed to allege any presuit knowledge of infringement by VMware at all, Lionra should not be permitted to unilaterally manufacture this required—but missing—element of its indirect infringement claims.

Lionra's few other boilerplate indirect infringement allegations fare no better.  Lionra alleges that "user manuals and online instruction materials" on VMware's website demonstrate that "VMware continues to actively encourage and instruct its customers and end users … to use the accused products in ways that directly infringe" each Asserted Patent.  Am. Compl., ¶¶ 12, 22. But mere references to manuals or instructions about how to use an accused product alone are

insufficient to support a claim for induced infringement where, as here, the plaintiff has failed to allege pre-suit knowledge of infringement.  *See, e.g.*, *Textile Computer Sys., Inc. v. Broadway Nat'l Bank*, 620 F. Supp. 3d 557, 565 (W.D. Tex. 2022) ("Because [plaintiff] did not even plead knowledge of those patents, [plaintiff] did not properly allege inducement for those three patents."); *Voip-Pal.com, Inc. v. Facebook, Inc.*, No. 21-CV-00665-ADA, 2022 WL 1394550, at *3 (W.D. Tex. May 3, 2022) (induced infringement claims require "plausible allegations that Defendants had pre-suit knowledge of the patents"); *Bench Walk Lighting LLC v. LG Innnotek Co., Ltd.*, 530 F. Supp. 3d 468, 490 (D. Del. 2021) (dismissing induced infringement claims even where the plaintiff included reference to a product manual that instructed customers how to use the accused products).  Here, Lionra similarly fails to explain how VMware's manuals alone demonstrate that VMware "knowingly induced the infringing acts" and "possessed a specific intent to encourage" direct infringement by its "customers and end users."  *See CTD Networks LLC v. Microsoft Corp.*, No. 22-CV-01049-XR, 2023 WL 5417141, at *10 (W.D. Tex. Aug. 22, 2023) (dismissing indirect infringement claims where the complaint "allege[d] no facts that indicate how or why Microsoft would have known that its own acts or those of its customers amounted to infringement of the Patents-in-Suit or that any alleged[] infring[ement] was identified to Microsoft").  Indeed, VMware still has no knowledge of direct infringement because the complaint entirely fails to articulate any cognizable infringement theory, let alone a plausible one.

## V.    CONCLUSION

For the foregoing reasons, VMware respectfully requests that the Court grant its motion and dismiss Lionra's Amended Complaint in its entirety for failure to plausibly state a claim for relief.  Because the deficiencies from Lionra's original complaint, which VMware identified in its October 16, 2023 Motion to Dismiss (Dkt. 17), persist, any further amendment would be futile, and Lionra's claims should therefore be dismissed with prejudice.

Dated:  December 11, 2023        By:  */s/ Brian A. Rosenthal*  _____
                                     Brian A. Rosenthal

                                     Barry K. Shelton
                                     Texas State Bar No. 24055029
                                     bshelton@winston.com
                                     **WINSTON & STRAWN LLP**
                                     2121 North Pearl Street, Suite 900
                                     Dallas, TX  75201
                                     Telephone:  214-453-6407
                                     Facsimile:  214-453-6400

                                     Benjamin Hershkowitz
                                     bhershkowitz@gibsondunn.com
                                     Brian A. Rosenthal
                                     brosenthal@gibsondunn.com
                                     **GIBSON, DUNN & CRUTCHER LLP**
                                     200 Park Avenue
                                     New York, NY  10166-0193
                                     Telephone:  212.351.4000
                                     Facsimile:  212.351.4035

                                     Jaysen S. Chung (*pro hac vice*)
                                     jschung@gibsondunn.com
                                     Katherine Worden (*pro hac vice*)
                                     kworden@gibsondunn.com
                                     **GIBSON, DUNN & CRUTCHER LLP**
                                     555 Mission Street, Suite 3000
                                     San Francisco, CA  94105-0921
                                     Telephone:  415.393.8200
                                     Facsimile:  415.393.8306

                                     Nathaniel R. Scharn (*pro hac vice*)
                                     nscharn@gibsondunn.com
                                     **GIBSON, DUNN & CRUTCHER LLP**
                                     3161 Michelson Drive
                                     Irvine, CA 92612-4412
                                     Telephone:  949.451.3800
                                     Facsimile:  949.451.4220

                                     *Attorneys for Defendant VMware, Inc.*

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of this document has been

served on all counsel of record via the Court's ECF system on December 11, 2023.


<u>              */s/ Brian A. Rosenthal*              </u>
Brian A. Rosenthal